UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRANDON SNYDER,

    Plaintiff,

    v.

IDOC, et al.,

    Defendants.

CAUSE NO. 3:22-CV-567-JD-MGG

OPINION AND ORDER

Brandon Snyder, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Snyder is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Snyder is an inmate at Miami Correctional Facility. He alleges that on the morning of November 21, 2020, he fell in his cell and hit his eye on a metal cabinet, causing a "really big gash two inches long and a[n] inch wide." He showed the injury to

Officer Truax (first name unknown) as the officer was walking by his cell around 7 a.m. Officer Truax allegedly said he would "be back in 25 minutes when he finished count" to take Mr. Snyder to the medical unit. The officer never came back. After some time passed, Mr. Snyder pushed the intercom in his cell and spoke with Officer Carver (first name unknown), a member of the National Guard temporarily assigned to work at the prison, and told him that he had injured his eye.[1] Officer Carver called the medical unit but was told by the officer at the desk, Officer Benedict (first name unknown), that "they were too busy" to see Mr. Snyder at that time and that he should call back in 20 minutes. Another 30 minutes passed and Mr. Snyder hit the button again; Officer Carver reported to him that staff in the medical unit (he does not specify who) had again told him to call back later. Mr. Snyder kept pushing the button over the next several hours but no one responded.

Approximately 15 hours later there was a shift change. Mr. Snyder spoke with an officer who had just arrived, and this officer in turn spoke with his superior. At that point Mr. Snyder was taken to the medical unit for treatment. Two of the nurses told him he should have been brought over earlier and that because of the swelling they could not stitch up the injury. Instead, medical staff was "forced to try and butterfly tape" the wound. Mr. Snyder claims that this method resulted in his eyebrow looking "all jacked up" with a "wide scar." He believes that had he been brought over

---

[1] The court notes that November 2020 was the height of the COVID-19 pandemic. *See Coates v. Arndt*, No. 20-C-1344, 2020 WL 6801884, at *2 (E.D. Wisc. Nov. 18, 2020) ("The plain fact is that the country is experiencing a pandemic . . . . People, both inside and outside prisons and jails, are contracting COVID-19[.]"). It can be discerned that this National Guard officer was temporarily assigned to work at the prison due to staff shortages during this period.

2

immediately, the scar would have been "razor thin if done correctly." Based on these events, he sues 17 defendants: Officer Truax, Officer Benedict, National Guard Officer Carver, the Indiana Department of Correction ("IDOC"), IDOC Commissioner Robert Carter, Miami Warden William Hyatte, Deputy Warden Payne (first name unknown), Deputy Warden Sharon Hawk, Wexford of Indiana LLC ("Wexford"), various unnamed high-ranking medical officials, and three unnamed members of the medical staff. He seeks monetary damages and various forms of injunctive relief, including "medical rights for all DOC offenders."

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To plead a claim for the denial of medical care, a prisoner must allege (1) he had an objectively seriously medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, "conduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020).

3

Additionally, inmates are "not entitled to demand specific care." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019). Nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id*. Nevertheless, "inexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted).

Giving Mr. Snyder the inferences to which he is entitled at this stage, he has alleged a plausible Eighth Amendment claim against Officer Truax. He alleges that he had a large, visible wound above his eye which he showed to the officer, who told him he would come back shortly to take him to the medical unit. The officer never returned, and it can be plausibly inferred from Mr. Snyder's allegations that the officer did not take other steps (such as alerting another officer) to ensure Mr. Snyder received prompt medical care for his injury. As a result, there was a lengthy delay in treatment, which he alleges caused permanent disfigurement to his face.

As for National Guard Officer Carver, his only alleged involvement was to respond to Mr. Snyder's calls through the intercom. Unlike Officer Truax, he is not alleged to have seen Mr. Snyder's injury, nor does Mr. Snyder describe precisely what information he conveyed to him. Regardless, Mr. Snyder's allegations reflect that this officer did not ignore him, and instead contacted the medical unit promptly in response to Mr. Snyder's request for care. He was told they were too busy to see Mr. Snyder at

4

that time. It can be discerned that the officer called back but was given the same information. Although perhaps the safest course would have been to take Mr. Snyder to the medical unit anyway, "the mere failure . . . to choose the best course of action does not amount to a constitutional violation." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002).

Likewise, there is an insufficient basis to conclude that Officer Benedict was deliberately indifferent to Mr. Snyder's medical needs. As described in the complaint, her only involvement was the phone call from National Guard Officer Carver, in which she allegedly told him the medical unit was too busy and to call back in 20 minutes. This is not an inordinate amount of time to wait for medical care, and indeed, non-prisoners might expect to wait far longer at a hospital emergency room. *See Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (concluding that two-hour delay in receiving emergency medical care for a fracture did not amount to a constitutional violation, as "the public often waits longer at hospital emergency rooms"); *Robinson v. Stumph*, No. 18-CV-01851-MSK-KMT, 2021 WL 3675173, at *4 (D. Colo. Aug. 19, 2021) ("Although [the prisoner-plaintiff] might feel that 90 minutes is a long time to wait for medical treatment, especially in circumstances where he was concerned about his own health, common experience makes clear that such waits are not unusual in busy emergency rooms."). There is no plausible basis to infer that Officer Benedict was involved in these events other than the phone call, or that she was subjectively aware Mr. Snyder still had not received treatment after several hours and deliberately turned a blind eye to his

5

medical needs. He will be permitted to proceed on an Eighth Amendment claim against Officer Truax, but not the other two officers.

Mr. Snyder also names a host of high-ranking prison officials as defendants, but none of them are mentioned in the narrative section of the complaint, and there is no plausible basis to infer they had any personal involvement in these events. Liability under 42 U.S.C. § 1983 is based on personal responsibility, and these officials cannot be held liable for the actions of subordinate correctional employees simply because they oversee operations at the prison or within the IDOC. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Supervisory prison staff can be held liable for a constitutional violation only if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019). There is no factual content in the complaint to suggest that these officials had personal knowledge that Officer Truax failed to obtain medical care for Mr. Snyder for a period of 15 hours, or that they facilitated or condoned such behavior.

As to the Commissioner and the Warden, it appears he may be trying to sue them in their official capacity for an alleged unlawful policy or practice under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Such allegations are unavailing. An official capacity claim against these officials is the same as a suit against the State of Indiana. *See Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018) ("[A] state official (in his official capacity) *is* the state."). A state is not a "person" who can be sued for constitutional violations under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491

6

U.S. 58, 64 (1989). For this same reason, his claim against the IDOC cannot proceed. *See id.* An official capacity claim could proceed against high-ranking prison officials for injunctive relief to remedy an ongoing constitutional violation, *Fritz*, 907 F.3d at 533, but Mr. Snyder only describes a past injury occurring in 2020 with no indication of any ongoing violation.[2] These high-ranking officials and the IDOC will be dismissed.

He also names Wexford, the company that previously employed medical staff at Indiana prisons. Wexford's contract with IDOC terminated in July 2021 and it was replaced by Centurion Health ("Centurion"). *Baldwin v. Westville Corr. Facility*, No. 3:21-CV-682-DRL-MGG, 2021 WL 5759136, at *2 (N.D. Ind. Dec. 3, 2021). Wexford could be held liable for constitutional violations occurring during the time it provided medical care at Indiana prisons. *See Hildreth v. Butler*, 960 F.3d 420, 422 (7th Cir. 2020). However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and Wexford cannot be held liable solely because it employed medical staff at Mr. Snyder's prison. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020).

A private company performing a public function can be sued under *Monell*, but such entities "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of the official policy requirement is to "distinguish between the isolated wrongdoing of one or a few

---

[2] To the extent he is trying to seek prospective injunctive relief on behalf of other inmates who may need medical care in the future, he has no standing to do so. *Massey v. Helman*, 196 F.3d 727, 739–40 (7th Cir. 1999).

rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). "At the pleading stage . . . a plaintiff pursuing [a *Monell*] theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Mr. Snyder does not allege that any official policy or custom of Wexford caused him injury. *See Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (*Monell* requires a plaintiff to show that an official policy "was the 'moving force' behind his constitutional injury"). Indeed, he does not describe any specific wrongdoing by medical staff at the prison, and instead claims that correctional staff delayed in bringing him over to the medical unit, at which point it was too late for medical staff to stitch up his injury. Even assuming medical staff caused him injury in treating his wound, he does not describe any other incidents besides this one, and isolated instances of wrongdoing cannot form the basis for a *Monell* claim. *Howell*, 987 F.3d at 654.

Similarly, his allegations do not state a claim against the high-ranking medical officials he names as defendants, specifically, the Director of Nursing, the Health Services Director, and the Regional Medical Director. To the extent he intended to sue these individuals for damages, there is no indication they had any personal involvement in these events, and they cannot be held liable solely by virtue of their positions. *Mitchell*, 895 F.3d 498; *Burks*, 555 F.3d at 595. If he intended to assert a *Monell* claim against them, Wexford would be the proper defendant for such a claim, and as

8

outlined above he does not assert a plausible *Monell* claim against Wexford. He will not be permitted to proceed against these defendants.

As for the unnamed medical staff (identified only as a "nurse" and two "providers/doctors") who treated his injury, the court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 ( citation and internal quotation marks omitted). Mr. Snyder does not plausibly allege deliberate indifference under this standard. Rather, as he describes it, the options of these individuals were limited due to the amount of time that passed before he was taken to the medical unit. His allegations reflect that they did their best to close his wound with "butterfly tape." Although he believes their work left a scar that is unappealing, at most this suggests negligence, which cannot form the basis for an Eighth Amendment claim. *Hildreth*, 960 F.3d at 425–26.

As a final matter, Mr. Snyder includes boilerplate at the end of his complaint alleging the following claims in a general fashion: a "violation of his constitutional rights under the First, Eighth, and Fourteenth Amendment" to be "free of retaliation for exercising Free Speech activities"; "financial losses . . . associated with enforcing his civil rights pursuant to section 1983, 2000cc, ADA, Rehabilitation Act, and the laws of the state of Indiana"; prison staff "not reasonably accommodating [his] physical disability"; and "being discriminated against." (ECF 1 at 5-6.) It is unclear if he intended to assert claims under these constitutional provisions and statutes, or whether he may have borrowed this boilerplate from some other source, such as a complaint filed in

9

another case. In any event, merely "putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened . . . that might be redressed by the law" is not enough to state a claim under federal pleading standards. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). The only factual content in the complaint pertains to the alleged denial of medical care for his eye injury, and the court appropriately analyzed this claim under the Eighth Amendment. The court cannot discern how his allegations about the delay in care for an eye injury triggers a plausible claim under the First Amendment free speech clause, the Americans with Disabilities Act, the Equal Protection Clause, or the other legal sources he cites.[3]

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Officer Truax (first name unknown) in his personal capacity for money damages for denying him needed medical care for an injury to his eye on or about November 21, 2020, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES IDOC, Robert Carter, William Hyatte, Payne, Sharon Hawk, Carver, Benedict, Industrial Complex Director, Wexford of Indiana LLC, Health Services Director, Director of Nursing, Provider, Provider, Nurse, and Regional Director as defendants;

---

[3] If he thinks he can state a plausible claim under one of these provisions, he is free to amend his complaint, but he must include enough factual content to assert a claim that is plausible on its face. *Twombly*, 550 U.S. at 570.

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Truax (first name unknown) at the Indiana Department of Correction and to send him a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(6) ORDERS Officer Truax to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 31, 2022

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT