UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRANDON SNYDER,

    Plaintiff,

    v.       CAUSE NO. 3:22-CV-567-APR

TRUAX,

    Defendant.

OPINION AND ORDER

Brandon Snyder, a prisoner without a lawyer, brought this action against Officer Todd Truax "in his personal capacity for money damages for denying him needed medical care for an injury to his eye on or about November 21, 2020, in violation of the Eighth Amendment." [DE 7 at 10]. On November 6, 2023, Officer Truax filed a motion for summary judgment. [DE 41]. Snyder filed a response, and Officer Truax filed a reply. [DE 47, 48]. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Federal Rule of Civil Procedure 56(a)**. A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. ***Heft v. Moore***, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the

evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994.) "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also* *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference." *Stockton*, 44 F.4th at 615.

Where, as here, a plaintiff alleges a delay in providing medical care, the plaintiff must also produce "verifying medical evidence" that the delay had a detrimental effect. *Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996) (agreeing with the Eighth Circuit that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed"). Thus, an "action will not lie unless the plaintiff introduces verifying medical evidence that shows his condition worsened because of the delay." *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009); *see also* *Williams v. Liefer,* 491 F.3d 710, 714-15 (7th Cir. 2007) (stating that plaintiff must "offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm").

In his deposition, Snyder testified to the following facts: On the morning of November 21, 2020, Snyder fell from the bottom bunk in his cell and hit his eyebrow on a metal cabinet, resulting in "a little" blood and a small cut on his eyebrow. [DE 41-1 at 15-16, 20]. Around 7:00 a.m., Snyder showed Officer Truax the injury at his cell while Officer Truax was performing the morning count. *Id.* at 15-16. Officer Truax told Snyder he'd come back in twenty minutes once he finished the morning count to take him to the medical unit. *Id.* However, Officer Truax never returned to Snyder's cell to take him to the medical unit, and Snyder didn't see Officer Truax again that day. *Id.* at 15-16, 40-41. Once the morning count ended and Snyder was let out of his cell, he pushed the intercom button in the dayroom and spoke to Officer Carver. *Id.* at 31, 34. Snyder informed Officer Carver he'd injured his eye and Officer Truax was supposed to take him to the medical unit. *Id.* at 34. Officer Carver stated that Officer Truax wasn't around, so Officer Carver contacted the medical unit for Snyder but was told they were "too busy" at that time and to call back in an hour. *Id.* at 34-36. About an hour later, Snyder again contacted Officer Carver over the intercom but was told the medical unit still wasn't ready for him. *Id.* at 37-39. Snyder continued contacting Officer Carver throughout the day, but was repeatedly told the medical unit was busy. *Id.* at 39-40.

Around 6:00 p.m., Snyder spoke with Officer Nethercutt about taking him to the medical unit. [DE 41-1 at 42-43]. Around 11:30 p.m., Officer Nethercutt took Snyder to the medical unit for treatment. *Id.* at 45. Snyder was seen by Nurse Adetunji, who examined his eyebrow and found the cut was approximately 2.5 cm in length and .2 cm deep. [DE 41-3 at 1-3]. The cut was not bleeding and minimal swelling was noted. *Id.* There were no signs of infection. *Id.* Sterile strips were used to approximate the wound because he "presented late for suturing," and appropriate dressing was applied. *Id.* Tylenol was prescribed for any pain. *Id.* The next morning,

3

Snyder was seen by Nurse Myers to "see if [his eyebrow] needed sutures." *Id.* at 5. Nurse Myers told Snyder that Nurse Adetunji did a fine job with the sterile strips, she "likely would have just steristripped this" if she'd seen him last night, and the wound "would heal just fine." *Id.* Snyder received no further treatment for his cut, and it no longer causes him any pain. [DE 41-1 at 58; DE 41-3].

Officer Truax argues summary judgment is warranted in his favor because his conduct was not deliberately indifferent and only resulted in delaying treatment for several hours. [DE 42 at 7-9]. Snyder responds that Officer Truax was deliberately indifferent for failing to take him to the medical unit despite telling him he would do so. [DE 47].

Here, no reasonable jury could conclude Officer Truax's conduct rose to the level of deliberate indifference. Specifically, Snyder testified that Officer Truax passed by his cell while performing the morning count, looked at the cut on his eyebrow, told him he'd return after he finished with the morning count to take him to the medical unit, but never returned to his cell. Once the morning count ended, Snyder was let out of his cell and was able to contact a different correctional officer to request medical assistance. Because it is undisputed that (1) Snyder only spoke to Officer Truax briefly on one occasion while Officer Truax was conducting morning count, (2) Snyder had only a small cut on his eyebrow with "a little" blood, and (3) Snyder was free to move around the unit once the morning count ended and speak with other correctional officers, there is no evidence that Officer Truax's failure to return to Snyder's cell after morning count ended was anything more than mere negligence. *See* **Stockton**, 44 F.4th at 615 ("Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference."). Based on the evidence in the record, no reasonable jury could conclude Officer Truax exhibited a

4

"total unconcern" for Snyder's welfare in the face of serious risks or a "callous disregard" for his wellbeing.

Moreover, Snyder provides no "verifying medical evidence" that Officer Truax caused a delay in receiving medical treatment that had a detrimental effect on his condition. *See* **Langston**, 100 F.3d at 1240-41 (the plaintiff must "place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment"). First, it is undisputed Snyder spoke with Officer Carver shortly after speaking with Officer Truax, and Officer Carver contacted the medical unit several times but was told they were "too busy" to see Snyder. There's no evidence the medical unit would have responded any differently to Officer Truax than they did to Officer Carver. Moreover, Snyder's medical records show his wound was eventually treated with sterile strips and dressing, and that when he was accessed the next day for sutures the nurse concluded she "likely would have just steristripped" his wound if she'd seen him earlier and the wound "would heal just fine." [DE 41-3 at 5]. While Snyder speculates his face is "disfigured because [he] could not get stitches" [DE 47 at 6], the medical evidence refutes, rather than verifies, that the delay had any detrimental effect. *See* ***Davis v. Gee***, No. 14-CV-617-WMC, 2017 WL 2880869, at *5 (W.D. Wis. July 6, 2017) (collecting cases rejecting pro se prisoners' efforts to self-diagnose in the face of contradictory medical records).

Accordingly, there is no evidence by which a reasonable jury could conclude that Officer Truax was deliberately indifferent to Snyder's cut on his eyebrow, or that Officer Truax's delay in providing medical care had a detrimental effect on Snyder's condition. Summary judgment is therefore warranted in favor of Officer Truax.

For these reasons, the court:

(1) **GRANTS** Officer Truax's motion for summary judgment [DE 41]; and

(2) **DIRECTS** the clerk to enter judgment in favor of Officer Truax and against Brandon Snyder and to close this case.

SO ORDERED on July 23, 2024.

          /s/ Andrew P. Rodovich
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT